DECISION
Plaintiff appeals the 2009-10 real market value of property identified as Account 4198048.[1] A trial was held in the Oregon Tax Courtroom, Salem, Oregon, on October 12, 2010. Chris W. Chilberg (Chilberg), one of the two property owners, appeared on behalf of Plaintiffs. Bryce Krehbiel (Krehbiel), Registered Appraiser III, appeared on behalf of Defendant.
Plaintiffs' Exhibits A, B, and C and Defendant's Exhibits A through P and Exhibits A-1 through D-1 were admitted without objection.
 I. STATEMENT OF FACTS
Plaintiffs appeal the 2009-10 real market value of a 1,296 square foot Skyline 1993 manufactured home (subject property). (Ptfs' Ex A-1.) Chilberg testified that he purchased the subject property on August 7, 2008, paying $9,500. He testified that he insured the subject property for the amount ($9,500) he paid. (Ptfs' Ex B.) Chilberg testified that the real market value of the subject property as of January 1, 2009, was $10,545, a trended value computed by Krehbiel. (Ptfs' Ex C.) *Page 2 
Chilberg testified that the 2009-10 real market value is the amount he paid. He testified that he acquired the subject property from Bahs Bank of America FSB. (Ptfs' Ex A-2.) When asked how he knew that the subject property was for sale when it was not listed by a real estate agent or broker, Chilberg testified that, "when" he "did not get rent" from the individuals occupying the manufactured home in the mobile park, he contacted the "lender" to "see if it was for sale" or if the lender planned "to take it back." He testified that, by the time he contacted the mortgage holder, "the process was underway" to foreclose on the mortgagee. Chilberg testified that the mortgage holder does not necessarily take the first price Chilberg offers. He testified that he was not sure "how it all worked" and, for the subject property, his "bid was the most value" anyone would pay to purchase the subject property.
Krehbiel testified that his comparable sale analysis "focused on (1) comparable sales of similar homes, (2) time trending of those sales, and (3) arriving at a reasonable cost per square foot which [he could] then apply to the subject properties."[2] (Def's Ex F.) He testified that he selected "4 comparable sales * * * all sited within the Hidden Meadows Park but occurred as early as January 2008 and as late as April 2010. Time trending was necessary to arrive at accurate values for the assessment date. All appear to be arms length sales." (Id.) Krehbiel testified that he used "The Lane County Ratio Report for the period of 1/1/2008 through 12/31/2008" to compute "a-.42 [percent] per month (depreciation) change in value during this 12 month period prior to the January 1, 2009 assessment date. The Lane County Ratio Report for the period of 1/1/2009 through 12/31/2009, although not yet certified, indicates a continued depreciation of-1.38 [percent] per month during this time period." (Id.) *Page 3 
Krehbiel testified that the four comparable properties he selected were all located in the Hidden Meadows manufactured home park and the sale transactions occurred "between individuals rather than financial institutions." Krehbiel briefly reviewed each comparable property, noting that two of the manufactured homes were built in 1993 and the manufactured homes were of comparable size to the subject property. (Def's Ex F.) He testified that the "time trended" price per square foot for each comparable property was $17, $24, or $26 per square foot. Krehbiel testified that after reviewing comparable sales he believes that "$23 per square foot" is a "reasonable estimate of the real market value of the subject property."
 II. ANALYSIS
The issue before the court is the 2009-10 real market value of Plaintiffs' property. Real market value is the standard used throughout the ad valorem statutes except for special assessments. See Richardson v. Clackamas County Assessor, TC-MD No 020869D, WL 21263620, at *2 (Mar 26, 2003) (citing Gangle v. Dept. ofRev., 13 OTR 343, 345 (1995)). Real market value is defined in ORS 308.205(1), [3] which reads:
 "Real market value of all property, real and personal, means the amount in cash that could reasonably be expected to be paid by an informed buyer to an informed seller, each acting without compulsion in an arm's length transaction occurring as of the assessment date for the tax year."
There are three approaches of valuation (cost, income, and comparable sales) that must be considered in determining the real market value of a property even if one of the approaches is found to not be applicable. See ORS 308.205(2) and OAR 150-308.205-(A)(2). The subject property is primarily a residential structure. Neither party considered the cost approach or the income approach, even though the subject property is available for rent. *Page 4 
In a case such as the one before the court, the comparable sales approach "may be used to value improved properties, vacant land, or land being considered as though vacant." Chambers Management Corpand McKenzie River Motors v. Lane County Assessor, TC-MD No 060354D at 6 (Apr 3, 2007), citing Appraisal Institute,The Appraisal of Real Estate 335 (12th ed 2001).
Plaintiffs did not determine value using any of the three approaches of valuation. Plaintiffs relied on the purchase price paid for the subject property and used Defendant's time trend factors to determine a real market value. Chilberg's purchase was direct from a mortgage lender who was holding the mortgage on the subject property and the mortgagee was not making monthly mortgage payments. The subject property was not publically advertised for sale. Chilberg sought out the mortgage lender and bought the subject property to ensure that the properties located in the manufactured mobile home park did not remain vacant and the properties were maintained.
The statutory definition of real market value requires that the sale transaction be an arm's length transaction between a willing buyer and a willing seller, "each acting without compulsion." ORS 308.205(1). Plaintiffs' purchase does not meet the statutory definition. The subject property was not offered for sale on the open market. Chilberg contacted the mortgage holder, asking if the property was for sale and paying the seller's price. Chilberg offered no evidence that the transaction was arm's length, and he admitted that he did not know how the process worked. He offered no other evidence of value.
A review of the parties' evidence is governed by statute. "In all proceedings before the judge or a magistrate of the tax court and upon appeal therefrom, a preponderance of the evidence shall suffice to sustain the burden of proof. The burden of proof shall fallupon the party seeking affirmative relief * * *." ORS 305.427 (emphasis added). Plaintiff must establish *Page 5 
its claim "by a preponderance of the evidence, or the more convincing or greater weight of evidence." Schaefer v. Dept. ofRev., TC No 4530 at 4, WL 914208 *2 (July 12, 2001) (citingFeves v. Dept. of Rev., 4 OTR 302 (1971)). This court has stated that "it is not enough for a taxpayer to criticize a county's position." Poddar v. Dept. of Rev.,18 OTR 324, 332 (2005) (quoting Woods v. Dept. of Rev.,16 OTR 56, 59 (2002) (citation omitted.) Plaintiffs have not established "by a preponderance of the evidence" their requested real market value.
 III. CONCLUSION
Even though Plaintiffs have not carried their burden of proof, Defendant agreed that the 2009-10 real market value of the subject property should be $23 per square foot. The court accepts Defendant's determination. Now, therefore,
IT IS THE DECISION OF THIS COURT that the 2009-10 real market value of the subject property identified as Account 4198048 is $23 per square foot; and
IT IS FURTHER DECIDED that Plaintiffs' appeal of tax year 2008-09 is dismissed.
Dated this ___ day of February 2011.
If you want to appeal this Decision, file a Complaint in theRegular Division of the Oregon Tax Court, by mailing to:1163 State Street, Salem, OR 97301-2563; or by hand delivery to:Fourth Floor, 1241 State Street, Salem, OR.
 Your Complaint must be submitted within 60 days after the dateof the Decision or this Decision becomes final and cannot bechanged.
 This document was signed by Presiding Magistrate Jill A.Tanner on February 3, 2011. The Court filed and entered thisdocument on February 3, 2011.
[1] Plaintiffs' Complaint included tax year 2008-09; however, Plaintiffs presented no evidence of real market value for tax year 2008-09. Plaintiffs' appeal of tax year 2008-09 is dismissed.
[2] At trial, the parties agreed that each prefers to determine the subject property's real market value in terms of price per square foot. The court respects their preference and the court's conclusion is stated in terms of price per square foot.
[3] References to the Oregon Revised Statutes (ORS) are to year 2007.