IN THE OREGON TAX COURT
MAGISTRATE DIVISION
Property Tax

ROBIN SESSUMS,　　　　　　　　　　　)
　　　　　　　　　　　　　　　　　　　)
　　　　　　Plaintiff,　　　　　　　　　)　　TC-MD 110288C
　　　　　　　　　　　　　　　　　　　)
　　　v.　　　　　　　　　　　　　　　)
　　　　　　　　　　　　　　　　　　　)
MULTNOMAH COUNTY ASSESSOR,　　)
　　　　　　　　　　　　　　　　　　　)
　　　　　　Defendant.　　　　　　　　)　　**DECISION**

Plaintiff has appealed the value of the subject property, assessor's account R606812, for

the 2010-11 tax year. Trial was held by telephone on February 13, 2012. Plaintiff appeared on

her own behalf. Defendant was represented by Dave Babcock and Tina Burell, both of whom

are employed by the Multnomah County assessor. Both parties submitted exhibits.

## I. STATEMENT OF FACTS

The subject property is Plaintiff's personal residence, and is a newly constructed home

built in 2009, which Plaintiff purchased on May 14, 2009, for $460,000.[1] The home is located at

5897 SW Boundary Street, in the Hayhurst neighborhood, and is in close proximity to the

Beaverton-Hillsdale Highway. The subject property is approximately three miles southwest of

Portland and two miles east of Beaverton. (Def's Ex A at 2.)

The home itself is an approximately 2900 square foot,[2] contemporary style home, with

four bedrooms and three and one-half bathrooms. There is a 480 square foot attached two-car

garage. The home sits on a 6200 square foot lot (approximately) that slopes downward from the

---

[1] Construction apparently began in 2008, and the home was completed in 2009.

[2] Plaintiff reports the size of the home as 2851 square feet, while Defendant reports the total square footage of finished living space to be 2968 square feet. (Ptf's Ex 3; Def's Ex A at 3.) Because the court in the final analysis finds that the exact size of the home is not important to the determination of RMV, the court rounded the size of the home to 2900 square feet.

front to the back. The lot is level to the street in the front and is zoned R5. (Def's Ex A at 3.) The home has two levels of finished living space above ground and a finished daylight basement. The main floor, which is level with the street, is 1174 square feet in size, with a 900 square foot lower second level, and an 894 square foot finished basement. (*Id*. at 6.)

The current real market value (RMV) on the assessment and tax rolls for the 2010-11 tax year, which was sustained by the county board of property tax appeals, is $502,960. (Ptf's Exs 1, 2.) There is $285,820 of exception RMV, which represents the added value to the property based on the work done to the home after January 1, 2009.[3] (*Id*.) The property's maximum assessed value (MAV) and assessed value (AV) are $310,940. (*Id*.)

Plaintiff has appealed to this court seeking a reduction in the property's RMV to $383,667. (Ptf's Compl at 1.) Defendant is requesting that the court sustain the current values on the rolls.

## II. ANALYSIS

The issue in this case is the RMV of the subject property on the applicable assessment date, which is January 1, 2010. See generally ORS 308.007.[4] RMV is defined in the statute as "the amount in cash that could reasonably be expected to be paid by an informed buyer to an informed seller, each acting without compulsion in an arm's-length transaction occurring as of the assessment date for the tax year." ORS 308.205(1).

While there are three recognized methods for valuing property, the sales comparison approach is most appropriate for valuing residential property. *Ward v. Dept. of Revenue*, 293 Or 506, 511, 650 P2d 923 (1982) (citations omitted). The court looks at arm's length sales transactions of

---

[3] The court questioned Babcock about the exception value at the beginning of trial. Babcock explained that all of the exception value was due to the completion of the home and was attributable to the improvement RMV.

[4] All references to the Oregon Revised Statutes (ORS) are to the 2009 edition.

similar property to determine a correct RMV. *Richardson v. Clackamas County Assessor*, TC-MD No 020869D, WL 21263620 at *3 (Mar 26, 2003). The value of property is ultimately a question of fact. *Chart Development Corp. v. Dept. of Rev.*, 16 OTR 9, 11 (2001) (citation omitted).

Plaintiff purchased the subject property in May 2009 for $460,000. The sale was pending on May 4, 2009, and closed on or about May 14, 2009. The subject property's RMV on the tax roll as of January 1, 2010, is $502,960, approximately $43,000 more than Plaintiff paid for the property eight months earlier. Plaintiff requested that the RMV be reduced to $383,677, which is approximately $76,000 less than she paid for the subject property.

Plaintiff argues that her purchase price is not indicative of the market value of her property on the January 1, 2010, assessment date, because the purchase prices were agreed to eight months before the assessment date and the market was declining in 2009. Plaintiff mistakenly believed that the general state of the economy and the declining real estate market in the Portland area was "public knowledge." Plaintiff did attempt to demonstrate the decline in the market from the date of her purchase by showing that her comparable sale #1 (Def's comparable #2) was listed for sale in April 2008 for $725,000, that the list price was lowered several times, and that the property ultimately sold on December 2, 2009, for $439,000. (Ptf's Ex 5 at 10.) Defendant responded that sale #1's pricing history is not necessarily indicative of a general decline in the real estate market. Defendant posited that there could be many explanations for the sales history of that property, including the possibility that it was originally listed for considerably more than it was worth. At any rate, the court finds that the listing history for a single property is not sufficient to establish market conditions.

Plaintiff submitted a sales comparison grid sheet with three properties she believes are comparable to her home. (Ptf's Ex 3.) The grid sheet provides information on the year the comparables were built, the number of bedrooms and bathrooms, the type of heating and air-

conditioning, number of fireplaces, size of garage (single or double), size of home and the lot on which it sits, as well as the date the property sold, total sales price, and price paid per square foot. (*Id.*) Plaintiff did not make any adjustments to those comparable sales to account for differences between those properties and her home.

Plaintiff testified that her home is two doors down from a nursing home, and that there is a two-story apartment complex behind her home, that is visible from both of the decks on the rear of her home, as well as from all of the windows on the back of her house. Plaintiff further testified that the apartment complex is the only barrier between her home and the nearby noisy Beaverton-Hillsdale Highway. Plaintiff stated that her home was on the south side of the Beaverton-Hillsdale Highway, and she opined that homes on the north side of that highway and closer to Portland and the Portland West Hills are more valuable than her home.

In estimating the value of her property, Plaintiff relied most heavily on her comparable sale #1, which is Defendant's comparable sale #2. That property is 1.4 miles away from the subject, sold on or about December 1, 2009, which is within one month of the assessment date, for $136 per square foot. Plaintiff multiplies that per foot value by the size of her home and arrives at a value estimate for the subject property of $397,528. At trial, Plaintiff stated that she was willing to settle for that value, which is approximately $15,000 more than her requested RMV. Plaintiff felt that that was a fair method for valuing her property because the comparable, located at 3640 SW Boundary Street, was used by both parties, sold close to the assessment date, has a bigger home and yard, and is, in her opinion, in a better location and neighborhood, being located closer to Portland at the "start" of the West Hills. Moreover, while the only thing separating Plaintiff's home from the Beaverton-Hillsdale Highway is an apartment complex, her comparable #1 has large trees providing a barrier between that home and the highway.

DECISION  TC-MD 110288C                                                                 4

Defendant brought out on cross-examination that that comparable (3640 SW Boundary Street) had apartment complexes beside and behind it, while Plaintiff's property has single family residential homes on either side. Plaintiff responded that the property at 3640 SW Boundary Street was in a better location and that, while it did have an apartment complex on one side (as well as another behind at home), it had a single family residence on the other side. Plaintiff acknowledged that both apartment complexes could be seen from the comparable property both parties relied on.

Plaintiff's two other comparable sales occurred in November and December 2009. Both of those homes are slightly newer, have the same number of bedrooms, one less bathroom, and sit on slightly larger lots. They are also 4.5 miles away from the subject property. Comparable #2 sold for $400,000 in December 2009 ($125 per square foot) and comparable #3 sold in November 2009 for $402,500 ($121 per square foot). As indicated above, Plaintiff requests that her property be valued at $136 per square foot (the value from the sale of Plaintiff's comparable #1).

Defendant noted the fact that Plaintiff made no adjustments to her comparable sales. Defendant further noted that Plaintiff's comparables #2 and #3 were both bank owned properties and more than four miles away from the subject property whereas all of Defendant's comparable sales are within one mile of Plaintiff's property.

By statute, Plaintiff has the burden of proof and must establish an error in the record assessment by a "preponderance" of the evidence. ORS 305.427. The court has previously ruled that "[p]reponderance of the evidence means the greater weight of evidence, the more convincing evidence." *Feves v. Dept. of Revenue*, 4 OTR 302, 312 (1971); *see also Riley Hill General Contractor, Inc. v. Tandy Corp.*, 303 Or 390, 394, 737 P2d 595 (1987) (where the Oregon Supreme

Court explained that the derivation of the word "preponderance" is Latin in origin and "translates to 'outweigh, be of greater weight.'").

The burden of proof requires that the party seeking relief (Plaintiff in this case) provide evidence to support their argument. The evidence that a plaintiff provides must be competent evidence of the requested RMV of the property in order to sustain the burden of proof. *Woods v. Dept. of Rev.*, 16 OTR 56, 59 (2002). Evidence that is inconclusive or unpersuasive is insufficient to sustain the burden of proof. *Reed v. Dept. of Rev.*, 310 Or 260, 265, 798 P2d 235 (1990). Plaintiff has no formal training or experience in property valuation, and it was apparent during the trial that she was not familiar with standard appraisal techniques and supporting evidence, most notably, the necessity of making adjustments to comparable sales to account for differences between those properties and the property being appraised (the subject property). Plaintiff's failure to make the necessary adjustments to the comparable sales renders the evidence unpersuasive. Plaintiff has failed to meet the requisite burden of proof.

Under ORS 305.412, "the court has jurisdiction to determine the real market value * * * on the basis of the evidence before [it], without regard to the values pleaded by the parties" where the determination of RMV is an issue. The court has concerns that none of Defendant's comparison sales adjusted for the time of the sales, despite Defendant's appraisal report giving the most weight to sale #1, which occurred almost seven months prior to the January 1, 2010, assessment date for the 2010-11 tax year. (Def's Ex A at 5.) In light of the questionable reliability of Plaintiff's and Defendant's evidence, the court will refrain from exercising its jurisdiction to change the value.

/ / /

/ / /

/ / /

/ / /

III.  CONCLUSION

After reviewing the evidence and testimony of the parties, the court concludes that Plaintiff has failed to establish by a preponderance of the evidence an error in the RMV of the property identified as account R606812 for the 2010-11 tax year.  Now, therefore,

IT IS THE DECISION OF THIS COURT that Plaintiff's appeal is denied and the values currently on the assessment and tax rolls for the 2010-11 tax year are sustained.

Dated this ___ day of June 2012.


_____
DAN ROBINSON
MAGISTRATE


*If you want to appeal this Decision, file a Complaint in the Regular Division of the Oregon Tax Court, by mailing to: 1163 State Street, Salem, OR 97301-2563; or by hand delivery to: Fourth Floor, 1241 State Street, Salem, OR.*

*Your Complaint must be submitted within 60 days after the date of the Decision or this Decision becomes final and cannot be changed.*

*This document was signed by Magistrate Dan Robinson on June 7, 2012.  The Court filed and entered this document on June 7, 2012.*